UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

T.L.. and D.L., on behalf of their child, B.L.,

                       Plaintiffs,

      -against-

DEPARTMENT OF EDUCATION OF THE
CITY OF NEW YORK a/k/a THE BOARD OF
EDUCATION OF THE CITY SCHOOL DISTRICT
OF THE CITY OF NEW YORK,

                       Defendant.
----------------------------------------------------------------X

**10 CIV. 3125 (SLT) (LB)**

## PLAINTIFF'S RULE 56.1 STATEMENT

Petitioner, by their attorney, Neal Rosenberg, of the LAW OFFICES OF NEAL ROSENBERG, pursuant to Rule 56.1 of the local rules state as follows:

1. The parents filed the due process complaint in this matter on or about January 15, 2009.

2. The issue developed at the hearing was whether the parents were entitled to tuition reimbursement as a result of the DOE not offering a free and appropriate education when recommending a placement for B.L.

3. The Impartial Hearing Officer found that the DOE did not establish that it offered the student an appropriate program and placement for the 2008 2009 school year. The IHO further found that the Winston Prep program was appropriate for the student and met his special education needs for the 2008-2009 school year. Finally, the IHO found that there was nothing in the record to preclude tuition reimbursement on equitable grounds . The IHO directed the DOE to reimburse the parent for the cost of the student's placement at Winston Prep for the 2008-2009 school year in the

1

amount of $43,500.00. (See Exhibit "B" to the Complaint)

4. Thereafter, the DOE timely filed a petition for review at the New York State Office of State Review.

5. On March 12, 2010 , the New York State Review Officer ("SRO") held that the District had offered a FAPE for the 2008-2009 school year despite the fact that the Plaintiffs had demonstrated that the Individualized Education Program (IEP) placement of a collaborative team teaching ("CH") class with a 14:1 staffing ratio and the related services of counseling and speech/language therapy was sufficient to meet B.L.'s needs. (Exhibit "A" to the Complaint)

6. As a result of the adverse SRO decision dated March 12, 2010, a *de novo* appeal is herein being filed. (Exhibit "A")

7. B.L. was born on May 8, 1993 and lives in Brooklyn, New York. The student functions in the average range of intellectual ability.(Ex. 7-7).

8. Socializing is very difficult for the student; he has difficulty making friends. B.L. has difficulty reading social cues (Tr. 136).

9. B.L.'s processing speed is significantly delayed. He has difficulties in terms of writing and analytical work. The student has been diagnosed with attention deficit hyperactivity disorder ("ADHD").(Ex. 7-4). (Tr. 70, 100, 135-136)

10. B.L. needs frequent assistance with maintaining focus. He can be impulsive and distractible. As a result, he often struggles to participate effectively in a classroom environment and to demonstrate his strengths.

11. In April of 2006, B.L. underwent a neuro developmental evaluation at The McCarton Center in New York and recommended a school with small classes, specialized resources for meeting the student's needs and a positive environment in which to learn.(Ex. 7-9)

12. On June 10, 2008, the CSE scheduled an annual review meeting to develop an IEP for the student for the 2008-2009 school year (the "IEP").(Ex. C) (Tr. 222, 235).

13. The CSE classified the student with a disability under the "other health impairment" disability category.(Tr. 181; Ex. C-1).

14. The CSE made a program recommendation of a collaborative team teaching ("CH") class with a 14:1 staffing ratio and the related services of counseling and speech/language therapy. This program recommendation was a change from the previous year's recommendation of a special class with a 12:1:1 staffing ratio in a community school.(Ex. C-1, C-12). (Tr. 222)

15. At the time of the IEP meeting, the parent did not agree with the team's recommendation of a CH class due to the student's need for individualized attention in the small classroom and re-focusing.(Tr. 203, 223).

16. During the IEP meeting, the parent's advocate also noted that a CTT class would be inappropriate for the student.(Tr. 241-242).

17. At the end of the IEP meeting, the CSE team was aware that the parent was not in agreement with the program recommendation.(Tr. 212).

18. In a letter dated July 23, 2008, the DOE provided the final recommendations for the student, including a placement in a CTT class in Cobble Hill School of American Studies (the "recommended placement") (Exhibit "D")

19. In a letter dated August 15, 2008, the parent informed the DOE that she would enroll the student in Winston Prep for the 2008-2009 school year.(Ex. E-1).

20. The parent visited the recommended placement in October 2008.(Tr. 224, 254).

21. Any delay in the visiting the school was due to the fact that the parent was recovering from surgery in September.(Tr. 233, 255).

22. At the recommended placement, the parent observed a History class.(Tr. 224).

23. There were approximately 15-20 students in the CTT class, and a general education teacher and a special education teacher.(Tr. 224).

24. The special education teacher only remained in the class for approximately 20 minutes; he spoke to a group of 4 students and then left.(Tr. 224-225).

25. The parent did not find the recommended placement to be appropriate for the student. The class was too large and disruptive for her son to learn.(Tr. 227-228).

26. The parent spoke with Gail Trimmer, the compliance coordinator of special education at the recommended placement. The parent described the student to Trimmer. Trimmer said that a CH class would not be appropriate for the student.(Tr. 225-227).

27. The CTT class at the recommended placement would only be held in the subjects of math, science, English and social studies.(Tr. 31, 68-69).

28. The CTT class would not apply to required electives such as Spanish, art, music, technology and law. Rather, these classes would be taught in general education classes with no special education teacher. Art and music were required for graduation as were a total of seven electives. (Tr. 33-34, 68-69).

29. For the 2008-2009 school year, Spanish classes at the recommended placement contained between 25 and 30 students (Tr. 35).

30. Within a CTT class, 14 students is the cap for the special education students, not for the class as a whole. At the beginning of the 2008-2009 school year, the CTT class at the recommended placement contained 22 students. At the time of the hearing in this matter, the class contained 25 students.(Tr. 52, 71, 182).

31. In a letter dated October 10, 2008, the parent submitted an additional notice to the

DOE that she had visited the recommended placement and did not find it to be appropriate for the student for the reasons stated above. In the same letter, further written notice was provided to the DOE that the student would attend Winston Prep for the 2008-2009 school year and that the parent would request an impartial hearing. (Exhibit G)

32. The June 10, 2008 IEP does not adequately describe the student's present level of cognitive, social/emotional and academic functioning needs. Global and vague statements do not provide a meaningful description of the student's abilities or needs, nor provide sufficient specificity regarding the deficits that need to be addressed (See Exhibit C at p. 3-4).

33. B.L. needed to be in a smaller classroom and he would not have succeeded in a class with twenty students, even if there were two teachers in the class: one general education and one special education. B.L. needed to be in a small class where the teacher could keep him focused and on track and provide consistent one to one assistance. (Exhibit C (Tr. 102-105, 143-145).

34. At the IEP meeting, the CSE failed to include the participation of a related service provider who provided the student with speech/language therapy. (Exhibit C)

35. The IEP did not include a statement of the student's present level of academic achievement and functional performance with respect to his speech and language needs. (Exhibit C)

36. The IEP did not include data from standardized testing regarding the student's instructional levels in the core subjects of reading, writing and math. (Exhibit C)

37. The IEP did not include academic and functional goals that were specific and measurable. (Exhibit C)

38. The IEP did not include academic and functional goals relating to the student's

5

speech and language needs. (Exhibit C)

39. The June 10, 2008 IEP does not describe the student's present levels of academic performance. Teachers' estimates alone are not sufficient to provide baseline data on the student's present level of academic performance. (Exhibit C)

40. If the CSE recommends a modification of a child's current placement it must do so pursuant to a written evaluation, furnished to the parent, setting forth the reasons for such modifications. To initiate a change in placement a District must provide: (1) a description of each evaluation procedure, assessment or report the agency used as a basis, and (2) description of other options considered by the CSE team, and a reasons those options were rejected.

41. The June 10, 2008 IEP is further inappropriate as its academic and functional goals are vague and overbroad. (Exhibit C)

42. Lastly, the DOE failed to implement the IEP.

43. Winston Prep is a small private school for students with learning difficulties.(Tr. 100).

44. Winston Prep determines how each student learns best and develops individually tailored curricula to achieve success. Winston Prep faculty develops personal academic programs and teaches in small groups.(Tr. 100, 1 15, Ex. K).

45. For the 2008-2009 school year at Winston Prep, B.L. took the following classes: Math, Science, History, Literature, Writing, Language Skills, Focus, Physical Education and Art classes. Winston Prep had a 12:1 staffing ratio.(Tr. 100)

46. The students in a Winston Prep class tended to have largely homogeneous issues, which allowed the teacher to work both individually with students and with the group as a whole Similar to B.L., the students in his class had deficits in the areas of expressive language and

attention/focusing.(Tr. 100, 1 15, Ex. K).

47. Progress reports written by Winston Prep teachers presented specific goals and methodologies to address B.L.'s key deficit areas, including: reading (e.g. inferential skills), written expression, organizational skills, study and homework skills and social functioning.(Exs. I, J).

48. B.L.'s literature course featured developing independent reading and critical thinking skills through studying classics. Reading comprehension was a relative strength for B.L. His literature teacher estimated his reading level to be at about the twelfth grade level.(Tr. 91-93; 121; Ex. I-1-2).

49. B.L. completed at-home reading assignments and answered comprehension in a journal. B.L. developed analytical reading skills and practiced essay writing through the use of cognitive mapping and linear outlining.(Ex. I-13).

50. B.L. learned to strengthen organization, time management and study skills though a weekly and monthly syllabus and graphic organizers.(Ex. 1-3-4).

51. B.L. also learned to facilitate the writing process and organization through note taking, brainstorming, outlining, rough drafts and editing. He reinforced study and homework skills through the use of time management, binder organization and homework completion.(Ex. I-5). 52. B.L.'s deficits in pragmatic language were addressed in and out of the classroom . B.L. improved his expressive language through participating in structured class discussions in his Literature course. B.L. further improved his expressive language through methodologies utilized in his Writing and Language Skills classes, including: focusing on receptive and expressive language. The student's deficits in this area were addressed in and out of the classroom (Tr. 99, 124-126). The student improved his expressive language through participating in structured class discussions in his Literature course (Ex. I-3).

53. The one to one attention B.L. received in his classes at Winston Prep helped him to

7

succeed academically and socially. B.L.'s daily one to one time with his Focus Teacher helped the student to succeed. (Tr. 92, 100, 104, 147, 153, 229).

54. The student showed progress during the 2008-2009 school year at Winston Prep. As the school year progressed, the student improved in submitting assignments and in answering questions in class. His attention and focus in class improved. Progress report comments from the student's teachers included the following: B.L. is able to give interesting and informative presentations that show his research and knowledge. has taken a positive turn and has since been producing quality work and has maintained consistency with all assignments. B.L. is increasingly confident as a student.(Ex. J).

55. For the 2008-2009 school year, the student's grades were in the B range; he did not fail any classes. At Winston Prep, the student is earning credits toward a high school diploma and is on track to graduate.(Tr. 97, 107-108, 130, 167).

56. DOE took no steps to revisit the appropriateness of the recommended program.

WHEREFORE, it is respectfully requested for the aforementioned reasons that a summary judgment be made and entered reversing the decision of the Office of State Review, declaring for the aforementioned reasons that IDEA has been violated, that the DOE failed to offer a FAPE to B.L. for the 2008-2009 school year, and that the DOE be ordered to reimburse the parents for tuition paid and for related costs and attorney fees and costs and disbursement and any other relief that is just and equitable.

Dated: New York, New York
      January 6, 2011                                Respectfully submitted,

                                                                      Stewart Lee Karlin, Esq.
                                                                    NEAL H. ROSENBERG (NR7827)
                                                                    STEWART LEE KARLIN (SLK3720)
                                                                    Attorney for Plaintiff
                                                                    9 Murray Street, Suite 4W
                                                                    New York, N.Y. 10007
                                                                    (212) 732-9450