UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
**10 CIV. 3125 (SLT) (LB)**

X------------------------------------------------------------X

T.L.. and D.L., on behalf of their child, B.L.,

Plaintiffs,

-against-

DEPARTMENT OF EDUCATION OF THE
CITY OF NEW YORK,

Defendant.

X------------------------------------------------------------X

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

s/Stewart Lee Karlin, Esq.
NEAL H. ROSENBERG (NHR 7827)
STEWART LEE KARLIN (SLK3720)
Attorneys for Plaintiff
9 Murray Street, Suite 4W
New York, N.Y. 10007
(212) 732-9450

TO: Toni Gantz, Esq.
Ass't Corp Counsel
via ECF

# TABLE OF CONTENTS

| Item | Page |
|---|---|
| TABLE OF CONTENTS | i-ii |
| TABLE OF AUTHORITIES | ii-iv |
| **PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** | 1-7 |
| **PRELIMINARY STATEMENT** | 1 |
| **ARGUMENT** | 1-7 |
| 1. The failure to include speech and language goals, an area of critical deficit renders the IEP invalid | 1-2 |
| 2. The DOE changed the placement without demonstrating the basis for removing significant educational support | 2 |
| 3. DOE Could Not Implement the IEP | 2-3 |
| 4. The large class size is inappropriate to meet BL.'s needs | 3 |
| 5. Winston Prep was an appropriate placement | 3-6 |
| **CONCLUSION** | 7 |

# TABLE OF AUTHORITIES

**Statute**                                                                                                                                    **Page**

8 NYCRR §200.4[d][2][iii];. ................................................... 1

8 NYCRR §200.4(b)(6)(vii);. .................................................. 2

20 U.S.C. §1401(9);. .......................................................... 4

20 USC 1415(c);. ............................................................. 2

*Bd. of Educ. V. Rowley,*
458 U.S. 176, 207, 102 S. Ct. 3034, 73 L.Ed.2d 690 (1982);. ..................... 4

*Education Law* §4402 (b)(3)(b)(i);. ............................................ 2

*Florence County Sch. Dist IV v. Carter;.* ...................................... 4
*510 U.S. 7, 114 S. Ct. 361126 L. Ed. 2d. 284 (1993);.* ......................... 4

*Frank G. v. Board of Educ. Of Hyde Park,*
459 F. 3d 356 (2nd Cir. 2006);. ..................................... 3

*Knable ex rel. knable v. Bexley City Sch. Dist.,*
231 F.3d at 105 (6th Cir. 2001). .................................... 4

*M.S., 2321 F.3d at 104;.* ..................................................... 4

*M.S., 231 F.3d at 105;.* ..................................................... 4,5

*Rowley, 458 U.S. at*
*207, 102 S.Ct. 3034;.* ......................................................... 4

*Waren G. V. Cumberland County Sch. Dist.,*
190 F.3d 80, 84 (3d Cir. 1999);. ............................................... 4

**Applications of a Child with a Disability**

Application of a Child with a Disability, Appeal No. 02-059;. .................. 6

Application of a Child with a Disability, Appeal No. 99-97;. ................... 1

Application of a Child with a Disability, Appeal No. 03-003;. .................. 6

Application of a Child with a Disability, Appeal No. 03-091;. . . . . . . . . . . . . . . . . . . . . . . . . . 6

Application of the Bd. Of Educ., Appeal No. 03-100;. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Application of a Child with a Disability, Appeal No. 05-070;. . . . . . . . . . . . . . . . . . . . . . . . . . 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

T.L.. and D.L., on behalf of their child, B.L.,

                           Plaintiffs,

                                                      10 CIV. 3125 (SLT) (LB)

-against-

DEPARTMENT OF EDUCATION OF THE
CITY OF NEW YORK,
                           Defendant.
---------------------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

Plaintiff submits this memorandum of law in further support of Plaintiff's motion for summary judgment.

**ARGUMENT**

**1.   The failure to include speech and language goals, an area of critical deficit renders the IEP invalid**

An IEP is substantively invalid if it fails to include appropriate goals. (34 C.F.R. § 300.347[a][2]; 8 NYCRR 200.4[d][2][iii]; <u>Application of the Bd. Of Educ.</u>, Appeal No. 03-100; <u>Application of a Child with a Disability</u>, Appeal No. 99-97). DOE simply did not include academic and functional goals relating to the student's speech and language needs. (Exhibit C). Thus, this critical deficit would not be addressed. In short, BL's teachers would not be measuring his educational progress regarding this critical deficit. Defendant has argued that pragmatic goals are a substitute for speech and language goals. This is simply false. Speech and language goals are

entirely different. Pragmatic skills relate to social skills with peers, not speech and language. In fact, a student may have no deficits in speech and language but still have significant pragmatic language deficits. Further, as stated earlier pragmatic goals are not speech and language goals. Put simply, the IEP is fundamentally flawed.

### 2. The DOE changed the placement without demonstrating the basis for removing significant educational support.

The CSE made a program recommendation of a collaborative team teaching class. This program recommendation was a change from the previous year's recommendation of a special class with a 12:1:1 staffing ratio in a community school.(Ex. C-1, C-12). (Tr. 222) This is a significant removal of educational support. The CT classroom has twenty to twenty-five students with majority being mainstream students. Before making such a significant change, the DOE should include the basis for the removal of significant educational support, particularly when the parent is objecting to the change. Education Law §4402 (b)(3)(b)(i); 8 NYCRR §200.4(b)(6)(vii); see also 20 USC 1415 (c)

### 3. DOE Could Not Implement the IEP

The Impartial Hearing Officer properly determined that the lack of specialized instruction by a special education teacher in the elective classes required for graduation from high school is not a de minimis violation; it is a material failure rendering the placement inappropriate as a matter of law. It is not controverted that the elective classes such as Spanish, Art, Music, Technology and Law are required for graduation. The CTT class would not apply to these required elective classes. These classes would be taught in general education classes with no special education teacher. Art and music were required for graduation as were a total of seven electives.(Tr. 33-34, 68-69). For the

2008-2009 school year, Spanish classes at the recommended placement contained between 25 and 30 students (Tr. 35). Further, there would be no special education instruction and there is nothing in the record to indicate there would be special education instruction in these very large classrooms. B.L. required a much smaller classroom environment with individual special education instruction in order to progress educationally.

### 4. The large class size is inappropriate to meet BL.'s needs

The CTT class with a general education teacher and a special education teacher that remained in the class for approximately 20 minutes was not appropriate for her son. The class was too large and disruptive for her son to learn.(Tr. 227-228). The CTT class at the recommended placement would only be held in the subjects of math, science, English and social studies.(Tr. 31, 68-69). Within a CTT class, 14 students is the cap for the special education students, not for the class as a whole but typically those classes would have approximately twenty students. At the beginning of the 2008-2009 school year, the CTT class at the recommended placement contained 20-25 students. At the time of the hearing in this matter, the class contained 25 students.(Tr. 52, 71, 182). B.L. would educationally regress in a class with twenty students, even if there were two teachers in the class: one general education and one special education (Tr. 102-103) In fact B.L. was even distractible in a one to one session. (Tr. 138). Here, the evidence is overwhelming that B.L. needed to continue his placement in a 12:1:1 self contained classroom.

### 5. Winston Prep was an appropriate placement

The burden to establish The Vanguard School as an appropriate placement rests with the parent. The standard by which a private placement is determined to be appropriate is found in *Frank G. v. Board of Educ. Of Hyde Park, 459 F. 3d 356 (2nd Cir. 2006)*. In an extensive discussion of the

3

requirements necessary to establish the appropriateness of the private placement the court stated:

Parents seeking reimbursement for a private placement bear the burden of demonstrating that the private placement is appropriate, even if the proposal in the IEP is inappropriate. *M.S., 2321 F.3d at 104* Nevertheless, parents are not barred from reimbursement where a private school they choose does not meet he IDEA definition of a free appropriate public education. *See 20 U.S.C. §1401 (9).* An appropriate private placement need not meet state education standards or requirements. Carter, *Florence County Sch. Dist IV v. Carter, 510 U.S. 7, 114 S. Ct. 361 126 L. Ed. 2d. 284 (1993),* For example, a private placement need not provided certified special education teachers or an IEP for the disabled student. *Id.* In addition, parents "may not be subject to the same mainstreaming requirements as a school board." *M.S., 231 F.3d at 105* (citing *Waren G. V. Cumberland County Sch. Dist., 190 F.3d 80, 84* (3d Cir. 1999) [holding that "the test for the parents' private placement is that it is appropriate, and not that it is perfect"] "reasonably calculated to enable the child to receive benefits." *Bd. of Educ. V. Rowley,* 458 U.S. 176, 207, 102 S. Ct. 3034, 73 L.Ed.2d 690 (1982);

No one factor is necessarily dispositive in determining whether parents' unilateral placement is "reasonably calculated to enable the child to receive educational benefits" *Rowley, 458 U.S. at 207, 102 S.Ct. 3034.* Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs. *Knable ex rel. knable v. Bexley City Sch. Dist.,* 231 F.3d at 105 (6th Cir. 2001) (holding that a unilateral private where, *inter alia,* class sixes were small, the student made significant educational progress, and his grades and behavior improved significantly). To qualify

4

for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. *See M.S., 231 F.3d at 105.* "The test for parents' private placement is not perfection.") They need only demonstrate that the place provides "educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction."

Here, progress reports written by Winston Prep teachers presented specific goals and methodologies to address B.L.'s key deficit areas, including: reading (e.g. inferential skills), written expression, organizational skills, study and homework skills and social functioning. (Exs. I, J). B.L. completed at-home reading assignments and answered comprehension in a journal. B.L. learned to strengthen organization, time management and study skills through a weekly and monthly syllabus and graphic organizers.(Ex. 1-3-4). B.L. also learned to facilitate the writing process and organization through note taking, brainstorming, outlining, rough drafts and editing. He reinforced study and homework skills through the use of time management, binder organization and homework completion.(Ex. I-5). B.L.'s deficits in pragmatic language were addressed in and out of the classroom . B.L. improved his expressive language through participating in structured class discussions in his Literature course. B.L. further improved his expressive language through methodologies utilized in his Writing and Language Skills classes, including: focusing on receptive and expressive language. The student's deficits in this area were addressed in and out of the classroom (Tr. 99, 124-126). The student improved his expressive language through participating in structured class discussions in his Literature course (Ex. I-3). Thus, although a speech and language therapist was not provided, speech and language was targeted throughout the school day in and out of the classroom.

5

The one to one attention B.L. received in his classes at Winston Prep helped him to succeed academically and socially. B.L.'s daily one to one time with his Focus Teacher helped the student to succeed. (Tr. 92, 100, 104, 147, 153, 229). His speech and language were directly addressed and significantly improved. His ability to get along with other students also improved.

It is clear that Winston Prep met BL educational needs and BL thrived at Winston Prep.

### 6. The equities support a claim for tuition reimbursement

The DOE has argued that an award of tuition reimbursement would be improper because the parent had placed a deposit at Winston Prep. The equities do not prohibit a parent from entering into a contract with a private school prior to the start of the school year. The case law is well settled that a parent's preference for a private school placement is not dispositive of a claim for tuition reimbursement. (Application of a Child with a Disability, Appeal No. 05-070; Application of a Child with a Disability, Appeal No. 03-003) Moreover, the equities do not prohibit a parent from entering into a contract with a preferred private school prior to the start of the school year. See, Application of a Child with a Disability, Appeal No. 03-091; Application of a Child with a Disability, Appeal No. 02-059. The reason is simple. It ignores reality to hold otherwise.

The parent could not locate an appropriate special education school that would meet their son's unique needs on short notice and even if one was able to locate a school on short notice, then there would be no guarantee that a seat would be available. Further, the DOE did not even recommend a placement until July well after school had closed. This deprived the parent of an opportunity to visit the program. As a result, the parent, did what any parent would do under these extraordinary circumstances, the parent as a safeguard secured a seat. The DOE's own inexcusable delay in recommending an inappropriate program renders there objection baseless. Thus, DOE

deprived the parent of a disabled child an opportunity to actually view the program and decide its appropriateness for BL before the start of the school year.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant his summary judgment in all respects, that the determination of the SRO be vacated, and that the Court find that the DOE had failed to offer a free and appropriate education to B.L.. Plaintiff also respectfully requests that the Court find that Winston Prep was an appropriate placement, that equitable factors support an award of tuition reimbursement and that tuition be awarded for the 2008-2009 school year together with costs, a reasonable attorney fee, and disbursements and for such other relief as the Court deems just and appropriate.

Dated: New York, New York
       March 17, 2011

                                            Respectfully submitted,

                                            s/Stewart Lee Karlin, Esq.
                                            NEAL H. ROSENBERG (NHR 7827)
                                            STEWART LEE KARLIN (SLK3720)
                                            Attorneys for Plaintiff
                                            9 Murray Street, Suite 4W
                                            New York, NY 10007
                                            (212) 732-9450

TO: Toni Gantz, Ass't Corp Counsel
      via ECF